## REILLY v. RINGLAND ET AL.

1. **Landlord and tenant**: EMBLEMENTS. A tenant at will is entitled to emblements.

2. ——: ——. So, also, is a tenant whose lease is determined by the act of God, as the tenant's death, or the act of the owner in expelling him.

3. ——: ——: TENANT MAY ENTER UPON PREMISES. A tenant, having the right to emblements, may enter upon the premises to harvest the crops growing at the termination of his tenancy.

4. ——: OCCUPYING CLAIMANT. Where a judgment of the Circuit Court of the United States had awarded to W. the ownership of the land, and R. had subsequently recovered judgment against W. for improvements under the occupying claimant law, while W. was to be allowed three years in which to pay it, and he for some months delayed such payment, it was *held* that R. was lawfully in possession until the judgment was paid, and was entitled to the crops which he might raise upon the land.

5. **Pleading**: ESTOPPEL: ALLEGATION OF VALUE. Under our system of pleading, the question of value must be determined by evidence. A party is not estopped from proving the true value when he has, by mistake, alleged it incorrectly or where it has changed since the allegation was made.

*Appeal from Polk Circuit Court.*

TUESDAY, JUNE 30.

THIS is an action of replevin of four stacks of wheat, one stack of barley and three stacks of oats, and for damages for the wrongful detention thereof. The cause was tried to a jury who, under the direction of the court, returned a verdict for the defendant, Wells. Judgment being rendered on the verdict, plaintiff appeals. The further facts of the case are stated in the opinion.

*Galusha Parsons*, for appellant.

*T. Hawley* and *Finch & Sickmon*, for appellees.

MILLER, CH. J.—The record shows that William B. Wells, on the 30th of September, 1868, commenced an action in the

District Court of Webster county against Hannah Reilly to set aside her patent to certain lands; that that action was removed to the Circuit Court of the United States, in which a trial was had and a judgment rendered at the October term, 1869, in favor of said Wells, declaring him the true owner of the land and annulling the patent of Mrs. Reilly, which judgment was afterwards affirmed in the Supreme Court of the United States. On the 4th day of November, 1870, Mrs. Reilly filed her petition in the Circuit Court of the United States under the occupying claimant law, and at the May term, 1871, of said court she recovered a judgment against Wells for $2,353.39. In October, 1868, for a valuable consideration, Hannah Reilly conveyed to the plaintiff, her son, a portion of the land embraced in her patent which was subsequently annulled. The plaintiff continued in the actual occupancy of the land conveyed to him until ejected therefrom by process of law. He was not made a party to the action against Hannah Reilly. By the terms of the judgment in favor of Mrs. Reilly against Wells it was provided, among other things, that Wells should take no proceedings for the enforcement of his decree against Mrs. Reilly until the payment of the judgment rendered in her favor for the improvements made on the land by her, and that, in case of a failure to pay the same within three years, said Hannah Reilly should be entitled to hold the land free from the claim of Wells upon the payment of $3,500 within one year thereafter.

In July, 1871, Wells paid the judgment against him, and, on the 15th of the same month, sued out from the Circuit Court of the United States a writ of assistance, by virtue of which Hannah Reilly and the plaintiff were removed from the lands in question, and the grain mentioned in plaintiff's petition was taken possession of by the defendants. The plaintiff thereupon brought this action to recover back said grain.

The court instructed the jury "that under the possession given by the Marshal in the service of the writ of assistance introduced in evidence in this case, the defendant, Wells, was entitled to the possession of the property in controversy in

this case at the time of the commencement of this suit, and they will render a verdict accordingly, and will find the value of the property at the amount named in the petition, to-wit: two hundred and five dollars."

The first question involved in the instruction is, whether the writ of assistance, under which Wells obtained possession of the land, entitled him to the crops which were then upon the land, and had been raised by the plaintiff.

It is a broad and almost universal principle that the tenant who sows a crop shall reap it, if the term of his tenancy be uncertain. 1 Washburn on Real Property, 102, 106; 2 Blackstone's Com., 122; *Stewart v. Doughty*, 9 Johns., 108; Williams on Executors, 597. In order to entitle a tenant or his executor or administrator to emblements, his tenancy must be uncertain in its duration. *Debow v. Colfax*, 5 Halst., 128; *Kittredge v. Wood*, 3 N. H., 503; *Whitmarsh v. Cutting*, 10 Johns., 360; *Chesley v. Welch*, 37 Me., 106; *Harris v. Carson*, 7 Leigh. — In the next place the tenancy must be determined by the act of God, as by the death of the tenant, or by the act of the lessor or owner in expelling the tenant or terminating his tenancy. Ibid.

1. LANDLORD AND TENANT: emblements.

2. ———: ———.

One of the important rights of a tenant for life is this right to emblements, or profits of the crop which the law gives him, or to his executors, if he be dead, to compensate for the labor and expense of tilling and sowing the land. See Williams on Executors, 597. The same principles apply also to tenancies at will. *Davis v. Thompson*, 13 Me., 209; *Davis v. Brocklebank*, 9 N. H., 73; *Sherburne v. Jones*, 20 Me., 70; *Stewart v. Doughty*, 9 Johns., 108; *Chandler v. Thurston*, 10 Pick., 205.

A tenant having the right to the emblements, has the corresponding right also to enter upon the premises to harvest the crops growing at the termination of his tenancy. *Forsythe v. Price*, 8 Watts, 282; *Humphries v. Humphries*, 3 Iredel, 362; Coke on Lit., 56, *a*.

3. ———: ———: tenant may enter upon the premises.

By statute, in this State, " any person in the possession of real property with the assent of the owner, is presumed to be

a tenant at will, unless the contrary is shown." Revision, § 2216; Code, § 2014.

Under the law in regard to the rights of occupying claimants, and by the terms of the judgment in the Circuit Court 4. ——: occupying claimant. of the United States, (Rev. Ch. 97), the plaintiff was entitled to the possession of the land until Wells should pay off that judgment, which he could have done at once, or he might do so at any time within three years. He did not choose to pay off the judgment at the time of its rendition, but delayed such payment for about two months. By so doing he assented to the plaintiff remaining in possession during such delay. Plaintiff's possession was, therefore, with the assent of the owner. The duration of his tenancy was rendered uncertain by the defendant, and was determined by his act alone.

The case, therefore, is brought within the rule under which the tenant is entitled to the growing crops.

The defendant was allowed, by the law and the judgment of the court, to pay off the judgment for the improvements at any time within three years. Plaintiff was entitled to the possession in the meantime. The defendant might take the whole three years to make payment if he saw fit to do so. The law would be a mockery if the plaintiff, under such circumstances, would not be allowed to cultivate the land of which he was in the rightful possession, or, after having raised a crop thereon, the defendant should be permitted to take it away from him. When the statute gives the possession of land to an occupying claimant, as in this case, for three years, unless the owner shall sooner pay for the improvements, it does not mean that he shall have none of the fruits or benefits of such possession. It does not intend that the land shall lay idle and uncultivated, during this time, nor that the owner shall reap all of the results of the cultivation thereof by the occupying claimant, during the time he is in the lawful possession thereof.

We have examined the cases cited by appellees' counsel and find that but one of them sustains their theory of the case, namely: *Strode v. Swim*, 1 A. K. Marshall, 271, which holds that the successful claimant, electing to pay for improvements under

the occupying claimant law, is entitled to the crop growing on the premises when possession is taken. We have not seen the statute under which this decision was made. It may not have contained provisions giving time in which the successful claimant has the right to elect whether he will pay for the improvements or not, as our statute does, thereby creating a tenancy at will. Our statute on this subject did not originally, as enacted in the Code of 1851, contain this provision, but on the contrary, it contemplated an immediate election to pay or not at the time of the rendition of the judgment. (Revision, § 2267; Code of 1851, § 1236.) By Chap. 153, Laws of 1858, this provision was enacted as an amendment of Chap. 80 of the Code of 1851. The difference in the conclusions reached by the two courts, may very well result from differences in the two statutes.

In *Lane v. King*, 8 Wend., 584, cited by appellees' counsel, it was held that a *lessee* of the *mortgagor*, under a lease executed subsequent to the mortgage, is not entitled, as against the *mortgagee*, to crops growing on the mortgaged premises at the time of the foreclosure and sale of the same; and the *mortgagee* becoming the purchaser, may maintain trespass against the lessee for taking and carrying away the crops.

The doctrine upon which this decision is based is, that at that time in New York the mortgagee was the owner of the land; that a purchaser of the interest of the mortgagor, or a lessee under him acquired no rights as against the mortgagee, that he was a mere trespasser. (4 Johns R., 215; 16 Id., 289; 2 Id., 61.)

It was said that the mortgagor, in giving a lease, became a disseizor, as to the mortgagee. The court regarded the lessee as a trespasser and not entitled to notice to quit. In this case the occupying claimant was lawfully in possession, and, as we have seen, to all intents and purposes, a tenant at will. The distinction in the cases is radical and plain.

The case of *Ralston v. Ralston*, 3 G. Greene, 533, holds that a crop of wheat growing upon the land at the time it was set off and confirmed to the widow as dower, will pass with the land and be considered as a part of her estate unless reserved.

This case is not inconsistent with the conclusions we have above stated. We have seen that the rule of the common law is that a tenant for life, and also other tenants of estates of uncertain duration, are entitled to emblements. There was an exception, however, to this rule in respect to emblements in case of a dowress, because it was presumed that, when her husband died, she took the estate with the crops upon it; Coke 2d Inst., 80. The case in 3 Bing., 11, does not bear on the question before us. The instruction was erroneous to the prejudice of the plaintiff.

II. On the trial, plaintiff proposed to prove that the value of the grain replevied was not so great as stated in the petition; that, at the time of swearing to the petition, he supposed the grain to be in the same condition that it was when taken from him—in good marketable condition—and on that basis estimated its value; that he afterwards discovered that the grain had been badly stacked by the defendants, whereby it was seriously damaged and rendered of little value, etc.

5. PLEADING: estoppel: allegation of value.

The defendant objected to this evidence on the ground that plaintiff was bound by the statement of the value of the grain sworn to in his petition, which objection the court sustained. This ruling is assigned as error. There is nothing here upon which to base an estoppel as to the value of the grain. Our statute provides that a failure to deny an allegation of value in a pleading does not amount to an admission of its truth. Revision, § 2717. Under our system of pleading and practice, the question of value is one to be determined by proof. A party failing to deny an allegation of value is not estopped from offering evidence, nor should a party be precluded from proving the true value where, by mistake, he has alleged it incorrectly, or where the value may have changed since the allegation was made. This question is open for proof on both sides. The defendant has not taken any action, or been misled in any manner by the allegations as to the value of the grain replevied. The evidence was improperly rejected. The judgment will be

REVERSED.