896 F.Supp. 1040 (1995)
William H. SEXSMITH, Plaintiff,
v.
MARRIOTT INTERNATIONAL, INC., a Delaware Corporation, Marriott Management Services Corp., a New York Corporation, and Brian Finn, Defendants.
Civ. No. 95-909-FR.
United States District Court, D. Oregon.
September 7, 1995.
Geoffrey Wren, Terry & Wren, Portland, OR, for plaintiff.
Marc Abrams, Portland, OR, for defendants.

OPINION
FRYE, Judge:
The matter before the court is the partial motion to dismiss of the defendants (# 3).

*1041 BACKGROUND
On May 22, 1995, the plaintiff, William H. Sexsmith, filed a complaint in the Circuit Court of the State of Oregon for the County of Multnomah, against the defendants, Marriott International, Inc., Marriott Management Services Corp., and Brian Finn (collectively referred to as Marriott). On June 19, 1995, Sexsmith filed his First Amended Complaint alleging claims against Marriott for sexual discrimination, disability discrimination, wrongful discharge, infliction of emotional distress, and for violations of Portland Civil Code 23.01.050.
Sexsmith was first employed by Marriott in Seattle, Washington in 1987. In January of 1994, Sexsmith began working for Marriott in Portland, Oregon. Ginger Michaels was Sexsmith's immediate supervisor. Sexsmith's factual allegations are that Brian Finn, the General Manager of the Portland, Oregon operations of Marriott Management Services Corporation (1) made unwelcome comments to Sexsmith about Michaels' sex life; (2) failed to take appropriate action against another employee, Gary Coats, after Sexsmith reported to Finn that Coats had made unwelcome sexual advances toward Sexsmith; (3) and stopped scheduling Sexsmith to work in retaliation for Sexsmith's resistance to the sexual harassment.
On June 23, 1995, Marriott filed a notice of removal to the United States District Court for the District of Oregon. On July 14, 1995, Marriott filed its partial motion to dismiss on the grounds that (1) the Civil Rights Ordinance of the City of Portland does not provide a private right of action; (2) Sexsmith does not have a common law claim for wrongful discharge because the remedies provided under federal law are adequate; and (3) Sexsmith has failed to state a claim for relief for the infliction of emotional distress and for discrimination based upon Sexsmith's disability.

STANDARD OF REVIEW
A motion to dismiss under Rule 12(b)(6) will only be granted if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Gibson v. United States, 781 F.2d 1334, 1337 (9th Cir.1986), cert. denied, 479 U.S. 1054, 107 S.Ct. 928, 93 L.Ed.2d 979 (1987). The review is limited to the complaint, and all allegations of material fact are taken as true and viewed in the light most favorable to the non-moving party. Cassettari v. Nevada County, Cal., 824 F.2d 735, 737 (9th Cir.1987).

ANALYSIS AND RULING
Sexsmith has agreed to dismiss the third claim in his First Amended Complaint in which he alleges a claim for disability discrimination under O.R.S. 659.425 with a request for leave of the court to replead the third claim. The third claim for relief will be dismissed with leave to Sexsmith to replead.
In Seidel v. Albertson's, Inc., Civil No. 94-1275-FR, 1995 WL 82268 (Opinion filed February 22, 1995), this court held that P.C.C. 23.01.050 does not create a private right of action in the Circuit Courts of the State of Oregon. Sexsmith acknowledges that his first and second claims for relief under P.C.C. 23.01.050 are barred by this court's holding in Seidel. He argues, however, that this court should reconsider its holding in Seidel on the grounds that, under O.R.S. 46.040 and 46.045, the State of Oregon has agreed to the civil enforcement of Portland's ordinance. Plaintiff's Memorandum in Response to Defendant's Motion to Dismiss, p. 4. The court finds that the provisions of O.R.S. 46.040 and 46.045 are inapplicable. Therefore, Sexsmith's motion to reconsider this court's holding in Seidel will be denied. Accordingly, Sexsmith's claims under P.C.C. 23.01.050 will be dismissed for failure to state a claim for relief.
Sexsmith alleges a fourth claim for wrongful discharge. He alleges that he was discharged in retaliation for his resistance to sexual harassment. In an order entered on April 17, 1995, the Honorable James A. Redden, United States District Judge, adopted the Amended Findings and Recommendations of the Honorable Donald C. Ashmanskas, United States Magistrate Judge, in Dallal v. Burger King Corp., Civil No. 94-909-AS, in which Magistrate Judge Ashmanskas ruled that Title VII, as amended by the Civil *1042 Rights Act of 1991, is a statutory remedy for acts done in retaliation for the resistance of unlawful employment practices and precludes a claim for relief for wrongful discharge under the common law of the State of Oregon. Sexsmith has an adequate remedy under Title VII for his claim that he was discharged in retaliation for resisting sexual harassment. Accordingly, the motion of Marriott to dismiss the fourth claim for relief for wrongful discharge will be granted.
Marriott moves to dismiss Sexsmith's fifth claim for the infliction of emotional distress on the grounds that the facts alleged do not state a claim for relief. To state a claim for relief for the intentional infliction of emotional distress, a plaintiff must allege that "(1) defendant intended to inflict severe emotional distress on plaintiff,[1] (2) defendant's acts did in fact cause plaintiff to suffer severe emotional distress, and (3) defendant's acts consisted of `some extraordinary transgression of the bounds of socially tolerable conduct.'" Lewis v. Oregon Beauty Supply Co., 302 Or. 616, 626, 733 P.2d 430 (1987) (quoting Patton v. J.C. Penney Co., 301 Or. 117, 122, 719 P.2d 854 (1986)).
In his First Amended Complaint, Sexsmith alleges:
42.
At all material times, Brian Finn knew plaintiff was HIV+ and needed a low stress environment.
43.
While performing his job responsibilities, Finn demanded plaintiff reveal information about Ginger Michaels with an intent to cause plaintiff severe emotional distress or with reckless disregard whether his actions would cause plaintiff severe emotional distress.
44.
Finn's conduct was a significant factor in causing plaintiff to suffer severe, continuing emotional distress to plaintiff's noneconomic damage of $500,000. Plaintiff has suffered lost income in the approximate amount of $15,840 ... as well as lost future earnings and earning capacity in an amount to be proved at trial.
45.
Defendants' conduct was willful and wanton, and defendants should be assessed punitive damages in the sum of $1,000,000.
First Amended Complaint, pp. 10-11 (attached to Notice for Removal).
Marriott argues that the facts alleged by Sexsmith do not show that the acts of Marriott constituted an extraordinary transgression of the bounds of socially tolerable conduct.
The facts alleged in support of Sexsmith's claim for the infliction of emotional distress are that his supervisor, Brian Finn, demanded that Sexsmith reveal information about whether a co-employee, Ginger Michaels, had accused Sexsmith of sexual harassment and ignored Sexsmith's allegations of sexual advances by Gary Coats, another co-employee. Sexsmith argues that Finn's acts constituted an extraordinary transgression of the bounds of socially tolerable conduct because Finn knew that Sexsmith was HIV+ and very susceptible to stress.
As the court in Patton emphasized, the focus in a claim for the intentional infliction of emotional distress is not on the result, but on the purpose and the means used to achieve it.
`[The] essence [of the tort] is that the infliction of actual mental suffering on the plaintiff is the deliberate purpose of defendant's conduct, although that conduct may of course have an ulterior objective * * *. The additional requirement that defendant's means of inflicting the injury must have been extraordinary is explained as necessary, first, to distinguish actionable conduct from the insults, ill temper, and offensive jokes that persons are expected to endure under contemporary standards of behavior, and second, to provide a setting *1043 of objective reality for a claim of harm that otherwise rests only on evidence of the plaintiff's subjective reaction divorced from physiological or other tangible injury. * * *'
301 Or. at 123, 719 P.2d 854 (quoting Brewer v. Erwin, 287 Or. 435, 457, 600 P.2d 398 (1979)).
The court finds that the acts of Marriott as alleged by Sexsmith do not as a matter of law constitute an extraordinary transgression of the bounds of socially tolerable conduct. There are legitimate reasons for a manager to inquire about sexual harassment in the workplace, and Sexsmith has not alleged any facts which suggest that the manner in which Finn requested information from Sexsmith constituted outrageous conduct. The court concludes that the allegations of the complaint are insufficient to state a claim for relief for the intentional infliction of emotional distress. The motion to dismiss Sexsmith's fifth claim for relief for the intentional infliction of emotional distress is granted.

CONCLUSION
The partial motion to dismiss of the defendants (# 3) is granted as to that portion of the first claim for relief relating to P.C.C. 23.01.050 and as to the second, fourth and fifth claims for relief without leave to Sexsmith to replead; the motion is also granted as to the third claim for relief with leave to Sexsmith to replead.

ORDER
IT IS HEREBY ORDERED that the partial motion to dismiss of the defendants (# 3) is GRANTED as to that portion of the first claim for relief relating to P.C.C. 23.01.050 and as to the second, fourth and fifth claims for relief without leave to the plaintiff to replead; the motion is also GRANTED as to the third claim for relief with leave to the plaintiff to replead.
NOTES
[1] Under Oregon tort law, the employer-employee relationship is not a special relationship justifying a reduction in the degree of intent to inflict distress required to state a claim for relief. Rice v. Comtek Mfg., 766 F.Supp. 1539 (D.Or.1990).